NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN HOSPITAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 07-558 (JLL) |
| v. ) | |
| ) | OPINION |
| AMERICAN CASUALTY COMPANY ) | |
| OF READING, PA and CNA ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

For Plaintiff: John S. Bagby, Jr. (*Bagby & Associates*)
For Defendants: Benjamin A Fleischner (*White, Fleischner & Fino, LLP*)

**LINARES, District Judge.**

This matter comes before the Court upon the cross motions for summary judgment [CM/ECF #23, 25] filed by Plaintiff Warren Hospital ("Plaintiff" or "Warren"), Defendant American Casualty Insurance Company of Reading, Pa. ("ACC") and Defendant CNA Insurance Company ("CNA"). Also presently before the Court is the motion to strike or to file a sur-reply by ACC [CM/ECF #34]. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein, this Court denies ACC's motion to strike or for leave to file a sur-reply; grants ACC's motion for summary judgment; and denies Warren's motion for summary judgment.

**INTRODUCTION**

Warren is a non-profit hospital located in Phillipsburg, New Jersey. (Pl. 56.1 Statement ¶ 1.) Warren employed a nurse named Tracy Lee ("Lee") in 2003. (Id. ¶ 13; Def. 56.1 Statement ¶

1

15.)  In February 2003, Lee provided care to a man named Daniel Hagerty ("Hagerty"), whose abdominal cavity she irrigated with 50cc of fluid instead of 10cc of fluid.  (Def. 56.1 Statement ¶ 20.)  Hagerty required a temporary colostomy, and sued Lee and Warren for negligence on September 27, 2004.  (Id.; Pl. 56.1 Statement ¶ 13.)  Hagerty sued Warren solely under the theory of vicarious liability.  (Pl. 56.1 Statement ¶¶ 13, 15.)

Warren assumed the defense of the Hagerty lawsuit on behalf of both itself and Lee.  (Id. ¶ 23.)  Warren was unable to find an expert witness, and settled the Hagerty case for $425,000 in November of 2005.  (Id. ¶¶ 24-25, 27.)

During the period of time relevant to the Hagerty case, Warren layered its healthcare professional liability insurance coverage in the following manner, with lower levels of coverage depicted on the lower levels of the stack:

| |
|---|
| Additional excess insurance policy from One Beacon Insurance Company<br>Over $5 million |
| Excess insurance through Lexington Insurance Company<br>Over $1 million, up to $5 million |
| Self-insured retention<br>Up to $1 million per incident |

(Id. ¶¶ 7-12.)  Warren hired ProClaim America, Inc. ("ProClaim") to service the claims under its self-insured retention.  (Def. 56.1 Statement ¶ 8.)

Lee had a malpractice insurance policy of her own with ACC that provided up to $1 million per claim.  (Id. ¶ 12.)  Lee's ACC policy had an "other insurance" exclusion, which stated:

> If there is any other insurance policy or risk transfer instrument,

2

> including but not limited to, self insured retentions, deductibles, or other alternative arrangements ("other insurance"), that applies to any amount payable under this Policy, such other insurance must pay first. It is the intent of this policy to apply only to the amounts covered under this Policy which exceed the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise. This insurance will not contribute with any other insurance.

(Id. ¶ 14.)

In December 2003, Warren notified Lexington of the potential claim due to the Hagerty incident. (Id. ¶ 19.) Counsel for Hagerty contacted Warren in May 2004, seeking to have Warren promote settlement discussions between herself and Warren's insurer. (Id. ¶ 21.) Hagerty's counsel sought Lee's name in July 2004; another Warren nurse requested of Lee at that time that she not discuss the Hagerty incident with anyone else. (Id. ¶ 22.) After notice of the Hagerty complaint was received by Warren on October 15, 2004, Warren's attorney undertook a defense of both Lee and Warren. (Id. ¶¶ 25-26.)

Lee notified ACC after receiving her copy of the summons and complaint, and spoke with an ACC claim consultant on October 20, 2004. (Id. ¶¶ 29-30.) Lee told ACC about Warren's defense. (Id. ¶ 30.)

ACC notified Warren's claims agent at ProClaim that ACC took the position that the ACC insurance was excess to Warren's self-insured retention on July 28, 2005. (Id. ¶ 33.) Warren notified ACC on September 16, 2005, that Warren's position was that ACC's policy was primary insurance; this position was made firm in a letter sent from ProClaim to ACC on October 31, 2005. (Id. ¶¶ 37-38.) Warren stated in its letter that it expected to be indemnified by ACC for its defense of Lee. (Id. ¶ 39.) Despite this disagreement, because the trial date for the

3

Hagerty case was looming, ACC and Warren entered into a "stand-still" agreement permitting Warren to settle the Hagerty matter before trial. (Id. ¶ 40.)

Warren filed the instant action, seeking declaratory judgment, indemnification, and equitable subrogation in the New Jersey Superior Court of Warren County, Law Division, on January 5, 2007. Defendants timely removed on February 2, 2007, under the diversity jurisdiction of this Court.

## DISCUSSION

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

A.  **Indemnity and Equitable Subrogation**

Warren asserts that it is entitled to indemnity from its employee, Lee, and that ACC must pay Warren on the Hagerty settlement under principles of equitable subrogation. (Pl. Br. at 6.) ACC, on the other hand, argues that employee indemnity of employers is no longer the law in New Jersey, and that the ACC policy is excess to the Warren self-insured retention. (Def. Opp. Br. at 4, 9, 11.)

1.  **Employee Indemnity of Employer**

Warren cites Frank Martz Coach Co. v. Hudson Bus Transportation Co. for the proposition that "where a principal or employer is not in fault, but has been compelled to pay damages to a third person for the negligence of his agent or employee, he may maintain an action over against such servant or employee to recover what he has been compelled to pay." 44 A.2d 488, 490 (N.J. Sup. Ct. 1945). ACC urges this Court not to recognize such a doctrine in New Jersey law at this time, arguing that the New Jersey Supreme Court abandoned employee indemnification of employers for a more modern non-indemnity relationship beginning with Eule v. Eule Motor Sales, 170 A.2d 241, 243 (N.J. 1961).

In Eule, the New Jersey Supreme Court ruled that a wife could sue her husband's partnership for personal injuries caused by the husband. 170 A.2d at 245. In so ruling, it addressed the issue of whether or not the wife's suit was merely an end-run around spousal immunity, as the defendant argued that the partner could simply sue the husband for indemnity as the husband's employer. Id. at 242. The New Jersey Supreme Court found the proposition that

5

an employer could be indemnified by its employee "anachronistic":

> The theoretical liability of an employee to reimburse the employer is quite anachronistic. The rule would surprise the modern employer no less than his employee. Both expect the employer to save harmless the employee rather than the other way round, the employer routinely purchasing insurance which protects the employee as well. Except for the rare case in which the liability of the employee may serve as a stepping stone to reach someone else, see Maryland Cas. Co. v. New Jersey Mfrs. Ins. Co., 48 N.J. Super. 314, 137 A.2d 577 (App. Div. 1958), affirmed 28 N.J. 17, 145 A.2d 15 (1958), the prospect of a claim for indemnity is only of academic significance.

Id. at 242-43. New Jersey courts have recognized that Eule announced an alteration in the previous state of the law. See, e.g., Fried v. Aftec, Inc., 587 A.2d 290, 297 (N.J. Super. Ct. App. Div. 1991) ("New Jersey apparently follows the New York rule in not permitting an employer to seek indemnity from an employee for acts of negligence causing the employer losses. Rather, the employer usually indemnifies the employee."); Brown v. United Cerebal Palsy/Atlantic & Cape May, Inc., 650 A.2d 848, 850 (N.J. Super. Ct. Law Div. 1994) ("The employee should not, therefore, be required to bear that cost by way of indemnification to the employer."). The exception in Eule to discontinuing the use of the employee indemnification of the employer doctrine, however, is precisely the situation in this case.

In relevant part, Maryland Casualty Co. v. New Jersey Manufacturers Insurance Co. involved a truck-loading accident where the court recognized that one individual was only being sued in order to reach his insurance. 137 A.2d 577, 585 (N.J. Super. Ct. App. Div. 1958). This is the use for the employee indemnity doctrine, as a "stepping stone to reach someone else," that Eule exempted from its general disapproval of the doctrine. Here, it is apparent that Warren

6

seeks to use the doctrine of employee liability to the employer as a stepping-stone to reach the ACC policy, as Lee is not even a named defendant in this matter. This Court, therefore, finds that the doctrine of employee indemnity of an employer applies in this case. Eule, 170 A.2d at 242-43.

### 2. Coverage Under Lee's ACC Policy

The issue of whether or not Lee must indemnify Warren, however, does not determine whether Lee's ACC policy provides coverage under these circumstances. The ACC policy in question contained the following language:

> If there is any other insurance policy or risk transfer instrument, including but not limited to, self-insured retentions, deductibles or other alternative arrangements ("other insurance"), that applies to any amount payable under this policy, such other insurance must pay first. It is the intent of this policy to apply only to the amounts covered under this Policy which exceeds the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise. This insurance will not contribute with any other insurance.

(Pl. Br. Ex. H, § VIII.) This section of the policy defines a "self-insured retention" as an "insurance policy or risk transfer instrument" and asserts that any such policy or instrument must pay before the ACC policy pays. (Id.) Furthermore, this section of the ACC policy attempts to fix the ACC policy as an excess policy in any otherwise applicable insurance scheme, requiring the otherwise applicable insurance to reach its limits prior to the contribution of the ACC policy.

Warren argues that this section is incompatible with New Jersey law, and that the absence of insurance can never be considered "other insurance." (Pl. Br. at 9.) In support of this

proposition, Warren relies upon American Nurses Ass'n v. Passaic General Hospital. 484 A.2d 670 (N.J. 1984). In American Nurses, a hospital had an excess policy over a $100,000 self-insured retention, but sought to have a nurse's insurance policy apply from dollar one rather than the hospital's self-insured retention. 484 A.2d at 672. The New Jersey Supreme Court held that the excess insurance clauses in the nurse's policy and the hospital's excess policy had to be read in the light of an ordinary policyholder's expectation, and that the nurse's policy would apply from dollar one rather than the hospital's self-insured retention. Id. at 673-74. In so ruling, the American Nurses court rejected the proposition that a self-insured retention constituted other insurance, but that rejection was based on the language used in the policies at issue in that case. Id. Notably, neither policy at issue in American Nurses offered a definition of other insurance that expressly included self-insured retentions. Id. In fact, American Nurses emphasized that the nurse's policy in that case repeatedly stated that it was excess to insurance rather than excess to self-insured retentions or deductibles. Id. at 673.

The language in the policy at issue in this case differs substantially from the clauses discussed in American Nurses. Here, ACC has crafted policy language that includes self-insured retentions (and deductibles) in a set of arrangements called insurance policies or risk transfer agreements, and expressly stated that the ACC coverage is excess to such arrangements. The other cases cited by Warren for the propositition that its self-insured retention can never be other insurance are similar to American Nurses. (Pl. Br. at 9-10.) New Jersey courts follow American Nurses in looking to the policy language in determining the meaning of "other insurance" clauses like those before this Court. See Moore v. Nayer, 729 A.2d 449, 456-59 (N.J. Super. Ct. App. Div. 1999) (finding that self-insured retention is not other insurance under policy stating that it is

8

excess to other insurance); Scott v. Salerno, 688 A.2d 614, 620 (N.J. Super. Ct. App. Div. 1997) ("While Bally's may be viewed as a practical matter as being self-insured for the first $150,000 of any loss by virtue of the retention or deductible in the policy, this retention or deductible does not qualify as other insurance under the Rutgers policy.").  Furthermore, New Jersey courts do not blindly apply a rule declaring that deductibles or retentions always require other policies to step in and pay from dollar one.  White v. Howard, 573 A.2d 513, 516 (N.J. Super. Ct. App. Div. 1990) ("We should not extrapolate from the Am. Nurses Ass'n language to hold that an entity which has chosen to self-insure under the financial responsibility laws should vis-a-vis other insurers escape the collateral effects of such undertaking.").

      This Court finds that New Jersey will give force and effect to the policy language as it would be understood by an ordinary policyholder, and will interpret the insurance policy in favor of the insured while not improving the insured's bargain.  Stewart Title Guar. Co. v. Greenlands Realty, L.L.C., 58 F. Supp 2d 370, 381 (D.N.J. 1999).  The policy at issue clearly and unambiguously puts the insured on notice that it will not step in and pay prior to a deductible or self-insured retention.  Neither party asserts that it is ambiguous, and this Court finds no ambiguity.  This reasoning is buttressed by at least one other court that examined a similar "other insurance" clause and found that the self-insured retention must pay first.  American Cas. Co. v. Tenet Healthsystem Hosp., Inc., No. 04-3270, 2006 WL 2631936, at *2-3 (E.D. La. Sept. 13, 2006) (analyzing similar policy language under Louisiana law).  Given the language of the policy, this Court finds that under New Jersey law the ACC policy will not pay prior to Warren's self-insured retention.

### 3. The ACC Policy Covers the Same Risk as the Uninsured Retention

Warren further argues that the ACC policy cannot be excess to Warren's self-insured retention because the self-insured retention was not covering the same risk as the ACC policy, and that therefore the ACC policy should step in and serve as primary coverage. (Pl. Br. at 15-19.) ACC opposes this claim by asserting that the terms of the policy state that it was excess to a self-insured retention, and that the funds disbursed by Warren to settle the Hagerty matter were in satisfaction of a self-insured retention. (Def. Opp. Br. at 9-11.)

This Court sees no viable legal distinction between the "same risk" argument put forth by Warren and its coverage argument. The cases cited by Warren with respect to the effect of "other insurance" clauses in primary insurance policies speak to issues not present in the instant case: here, this Court has ruled that the ACC policy unambiguously requires self-insured retentions to pay prior to the ACC policy. This is not, as Warren contends, a case in which a policy contains a traditional "other insurance" clause. (Pl. Br. at 16.) Warren is correct that a body of law has developed around traditional "other insurance" clauses in primary insurance policies. See CNA Ins. Co. v. Selective Ins. Co., 807 A.2d 247, 253-54 (N.J. Super. Ct. App. Div. 2002); Moore v. Nayer, 729 A.2d 449, 456 (N.J. Super. Ct. App. Div. 1999); Scott, 688 A.2d at 620-21 (emphasizing the importance in American Nurses of the clause in the policy at issue in evaluating "other insurance" clauses). Generally,

> a primary policy with an "excess other insurance clause" is a device which allows the "primary insurer [to] attempt [ ] to limit or eliminate its liability where another primary policy covers the risk." The excess "other insurance" clause generally provides that the insurer's liability will be limited to the amount of the loss that exceeds all other valid and collectible insurance up to the limits of

> the policy. Such a provision makes a primary insurer secondarily liable when other available coverage exists. However, a primary insurance policy that contains an excess "other insurance" clause does not "transform that primary policy into an excess policy."

CNA Ins. Co., 807 A.2d at 253-54 (internal citations omitted). The ACC policy at issue here does not use traditional "other insurance" or "other valid and collectible insurance" language. It expressly makes itself secondary to deductibles and self-insured retentions. Pl. Br. Ex. H, § VIII. The general body of caselaw discussing "other insurance," therefore, is inapposite, and Warren is not entitled to summary judgment on that basis.

**B.     ACC's Motion for Summary Judgment**

      ACC moves for summary judgment on two grounds.  First, it asks that this Court resolve the coverage issue in its favor.  Second, it seeks to have this Court find that Warren is equitably estopped from disclaiming an obligation to indemnify Lee.  ACC has already succeeded on its first ground for summary judgment: this Court held supra that the ACC policy is either excess or secondary to Warren's $1 million self-insured retention.  The remaining issue on summary judgment before this Court is ACC's assertion that Warren's assumption of Lee's defense until the eve of trial estops Warren from disclaiming indemnity now.

      The New Jersey Supreme Court recognized, in Merchants Indemnification Corp. v. Eggleston, 179 A.2d 505 (N.J. 1962), that an insurer could not disclaim coverage after undertaking a defense several months after it had notice of a potential fraud by the insured. In Eggleston, the insurance company sought to disclaim coverage of an automobile accident because it believed that the insured's arrangements concerning the ownership of the automobile

11

violated the insurance policy. 179 A.2d at 513-14. Despite knowing about the suspect ownership situation four months prior to undertaking a defense of the claim under the policy, and then undertaking that defense, the insurer attempted to disclaim coverage, and the Eggleston court found that the insurer had waived its breach of contract defense to coverage by reaffirming the contract after a reasonable period of time to investigate. Id. at 514. Courts applying New Jersey law have continued to use the Eggleston principle. See, e.g., Phamacia Corp. v. Motor Carrier Servs. Corp., 309 F. App'x 666, 671 n.3 (3d Cir. 2009) (unreported); Griggs v. Bertram, 443 A.2d 163, 168 (N.J. 1982); Sneed v. Concord Ins. Co., 237 A.2d 289, 317-21 (N.J. Super. Ct. App. Div. 1967).

Were this Court to conclude that Warren is an insurer, its decision to continue to defend the Hagerty matter could well have brought this case under the ambit of Eggleston and its progeny.  Eggleston, however, is a case shot through with policy considerations regarding the duty of a prejudice to insurers and their insureds, not indemnitors and the indemnified.  See 179 A.2d at 511-12 (discussing obligations to notify, defend, and pay judgment in terms of "carrier" and "insured").  As established in the caselaw cited by Warren in its summary judgment motion, maintaining a large self-insured retention does not make it an insurer.  See American Nurses, 484 A.2d at 673 (N.J. 1984) (layperson's understanding of "insurance" would not include self-insured retentions or deductibles).  Similarly, Warren is not an insurer with respect to Lee; under Eule, discussed supra, Warren is the indemnitor of Lee except when it seeks recovery from Lee's insurer, in which case it can utilize an "anachronistic" doctrine to recover sums paid out indemnifying its employee. 170 A.2d at 242-43. Given that Warren is an indemnitor, not an insurer, under the applicable law, and the cases cited by ACC in support of its estoppel argument

apply to insurers, this Court declines to extend the <u>Eggleston</u> estoppel principle to the indemnity context, and declines to grant summary judgment for ACC on that basis.

C.     **ACC's Motion to Strike or for Permission to File a Sur-Reply**

In the reply brief on its own motion for summary judgment, Warren argues that ACC should be estopped from attempting to disclaim coverage based on its marketing materials. (Pl. Reply Br. at 4-5.) Specifically, Warren quotes the following two sentences from ACC marketing material directed at nurses:

> **If your employer is self-insured and pays damages on your behalf, they could turn around and sue you for the money.**
> Without your own individual Malpractice insurance, you will NOT be covered in this situation. This program provides nurses with up to $6 MILLION aggregate in professional liability protection.

(<u>Id.</u> Ex. I at 4 (emphasis in original).) Warren claims that it only became aware of the marketing representations of ACC within "weeks" of composing the reply brief. (Pl. Reply Br. at 2 n.1.)

After this reply brief was filed, ACC responded with a motion to strike the estoppel argument or for leave to file a sur-reply. (Def. Strike Br. at 1-2.) This Court finds that it is proper to deny both of ACC's requests because its motion to strike adequately sets forth the grounds to reject Warren's estoppel argument, rendering additional relief moot. <u>Surrick v. Killon</u>, 449 F.3d 520, 526 (3d Cir. 2006). Specifically, the representation that Warren calls attention to with respect to ACC's marketing of insurance alerts nurses that they could be sued by their employer, and states that the ACC policy will cover them if such an event takes place. (Pl. Reply Br. Ex. I at 4.) Warren declined to sue Lee in this case. (Def. Strike Br. at 3.) Although Warren asserts that such an argument is not logical, the facts of this case indicate that Warren did

not sue Lee, and that ACC's representation in its marketing materials only states that ACC would indemnify the nurse if sued individually. (Pl. Reply Br. Ex. I at 4; Pl. Strike Opp. Br. at 3.) As this Court has noted, <u>supra</u>, the New Jersey Supreme Court distinguished in <u>Eule</u> the situation where an employee is sued for personal liability from the situation in which an employee is sued only to access insurance. 170 A.2d at 2432-43. ACC's policy and marketing materials are not inconsistent with its arguments in this case. It has argued that its policy does not contribute in place of a deductible or self-insured retention, and it has not argued that it would not cover Lee if Lee had been sued individually. This Court, therefore, finds Warren's estoppel argument inapplicable, and denies ACC's motion to strike or for leave to file a sur-reply as moot.

## CONCLUSION

For the forgoing reasons, this Court grants summary judgment to ACC and denies summary judgment to Warren. Furthermore, this Court denies ACC's motion to strike or to file a sur-reply. An appropriate Order accompanies this Opinion.


DATED: September 22, 2009        /s/ Jose L. Linares
                                 United States District Judge